**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHARIF ALI, aka** | : | |
| **RAYMOND SHELTON** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 20-CV-4320** |
| | : | |
| **COMMISSIONER BLANCHE** | : | |
| **CARNEY**, *et al.* | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**GALLAGHER, J.**                                          **DECEMBER 14, 2020**

*Pro se* Plaintiff Sharif Ali, a pretrial detainee housed at the Philadelphia Industrial Correctional Center ("PICC"), has filed a civil rights action pursuant to 42 U.S.C. § 1983 in which he names as Defendants Commissioner Blanche Carney of the Philadelphia Department of Prisons, PICC Warden Michelle Farrell, Deputy Warden C. Martin, and Sergeant Black.  He also asserts a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA").  Each Defendant is sued in their official and individual capacities.  Ali has also moved to proceed *in forma pauperis*.  For the following reasons, the motion to proceed *in forma pauperis* will be granted.  Certain claims in the Complaint will be dismissed in part with prejudice and in part without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Ali will be granted leave to amend his Complaint to attempt to reassert claims dismissed without prejudice or he may opt to proceed only on those claims the Court deems plausible as currently alleged.

## I.      FACTUAL ALLEGATIONS

Ali alleges that on or about July 10, 2019 he was denied participation in weekly Friday religious services for those of the Islamic faith.  (ECF No. 2 at 4.)[1]  In the period from June 21, 2019 to September 2, 2019, he was only allowed to attend services three times.  (*Id.*)  He alleges his faith requires he attend weekly services.  (*Id.*)

Ali filed a grievance about being locked in his general population cell for 21 hours each day due to a shortage of staff.  (*Id.* at 5.)  He asserts this lock down lasted from June 22, 2019 to September 2, 2019.  (*Id.*)  On August 12, 2019, he submitted a grievance with respect to his being denied attendance at religious holiday services.  (*Id.*)  On August 28, 2019 he submitted a grievance about Defendant Black's "tyranny on housing unit H2 during which he didn't allow Muslims to pray either alone or in congregation outside of the cell."  (*Id.*)  Ali also alleges that Black "sucker punched a Muslim inmate inside of the cell and on another occasion a Hispanic inmate."[2]  (*Id.* at 5-6.)  Black allegedly kept the unit on lock down by moving officers to other areas to punish inmates on the unit.  (*Id.* at 6.)

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

[2] Under 28 U.S.C. § 1654, parties "may plead and conduct their own cases personally or by counsel" in the federal courts.  Section 1654 thus ensures that a person may conduct his or her own case *pro se* or retain counsel to do so.  *See Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882 (3d Cir. 1991) ("The statutory right to proceed *pro se* reflects a respect for the choice of an individual citizen to plead his or her own cause." (quoting *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990) )).  Although an individual may represent himself *pro se*, a non-attorney may not represent other parties in federal court.  *See Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 232 (3d Cir. 1998) ("The rule that a non-lawyer may not represent another person in court is a venerable common law rule."), *abrogated on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007).  This principle has been applied by the Supreme Court, the United States Court of Appeals for the Third Circuit, and other courts in various contexts.  *See, e.g., Rowland v. Cal. Men's Colony*, 506 U.S. 194, 202 (1993) (recognizing that corporations must be represented by counsel and that "save in a few aberrant cases, the lower courts have uniformly held that 28 U.S.C. § 1654 . . . does not allow corporations, partnerships or associations to appear in federal court otherwise through a licensed

It appears that in or around early September 2019, Ali was transferred to the Special Management Unit ("SMU") at PICC.  On September 4, 2019, Ali filed a grievance regarding the law library in the SMU being inadequate because he had to choose between recreation time, shower time, or law library time.  (*Id.*)  He had only twenty minutes of library time with no assistance and could not make copies.  (*Id.*)  He submitted a grievance on September 9, 2019 regarding being kept in handcuffs and shackles during his exercise period.  (*Id.*)  The same day he filed a grievance because his wife was allegedly not permitted to visit because he was in the SMU.  He alleges the prohibition on visitation was arbitrary even though he concedes that no inmates in the SMU on punitive status are allowed visitors or phone calls.  (*Id.*)  Finally, he filed a grievance on October 9, 2019 after a segregation hearing before Deputy Warden Martin.  Ali alleges that Martin placed him in segregation and removed him from his prison job in retaliation for filing grievances.  (*Id.* at 7-8.)  Ali asserts that Defendant Carney did not respond to his attempts to contact her.  (*Id.* at 8.)

Ali asserts that Defendants Carney, Farrell, and Martin violated his First Amendment free exercise rights and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") because he could not attend services every Friday and on a religious holiday.  (*Id.* at 8-9, 9-10.)  He also alleges the Defendants permit other groups to observe their religious holidays.  (*Id.* at 9-10.)  He alleges that Carney, Farrell, and Martin violated his Fourteenth Amendment rights when

---

attorney" (footnote omitted) ); *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 667 (9th Cir. 2008) (holding that a non-lawyer could not litigate pro se on behalf of an ERISA plan); *Osei-Afriyie*, 937 F.2d at 882 ("We hold that Osei-Afriyie, a non-lawyer appearing *pro se*, was not entitled to play the role of attorney for his children in federal court."); *Phillips v. Tobin*, 548 F.2d 408, 411-12 (2d Cir. 1976) (holding that a non-attorney could not appear *pro se* to conduct a shareholder's derivative suit).  Accordingly, to the extent Ali mentions actions taken against other inmates, the Court assumes the allegation is provided as background for Ali's own claims, rather than an attempt by Ali to bring claims on behalf of other inmates.

he was locked in his cell for 21 hours per day while housed in the SMU with no opportunity for exercise.  (*Id.* at 9.)  Ali asserts that Defendant Black has "stopped Muslims from praying, interrupted my prayer and locked us in our cells for praying in the dayroom."  (*Id.* at 10.)  Black also allegedly assaulted inmates and Defendants Farrell and Martin had knowledge of his actions.  (*Id.*)  He alleges the lack of library resources, being restrained during exercise periods, and being denied visitation while in the SMU, violated his rights. (*Id.* at 10-12.)  Finally, he claims Deputy Warden Martin violated his rights at the segregation hearing by referring to Ali's history of filing grievances.  (*Id.* at 12-13.)  Ali seeks money damages and injunctive relief that he be allowed to (1) participate in weekly prayer, (2) not be locked in his cell for 21 hours per day, (3) participate in Muslim holiday services, (4) have access to a computer in the law library, (5) exercise without restraints, (6) have visitation while in the SMU, and (7) return to the general population and be moved out of the SMU.  (*Id.* at 13-15.)

## II.    STANDARD OF REVIEW

Because Ali is unable to pay the filing fee in this matter, the Court grants him leave to proceed *in forma pauperis*.[3]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).   Conclusory allegations do not suffice.  *Id.*

---

[3] Because Ali is a prisoner, under the terms of the Prison Litigation Reform Act he is still required to pay the filing fee in full in installments.

As Ali is proceeding *pro se*, the Court construes his allegations liberally.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III.    DISCUSSION

Ali's Complaint cites 42 U.S.C. § 1983 as the basis for the Court's subject matter jurisdiction over his claims.  That section provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A.    Claims Based on Grievance Process

Ali appears to assert claims against the Defendants based upon their roles in the prison grievance process.  These claims are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Constitutional claims based on the handling of prison grievances fail because "[p]rison inmates do not have a constitutionally protected right to a grievance process."  *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (per curiam).  Accordingly, the facts alleged by Ali about grievances do not give rise to a plausible basis for a constitutional claim and will be dismissed with prejudice.

**B.     Official Capacity Claims**

Ali has sued the Defendants in their official as well as individual capacities.  Claims against City officials named in their official capacity are indistinguishable from claims against the City.[4]  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.*  To plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights.  *See Monell*, 436 U.S. at 694.  "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'"  *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'"  *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).  For a custom to be the proximate cause of an injury, the Defendant must have "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to his injury."  *Id.* (internal quotations and alterations omitted).

---

[4] To the extent the allegation of official capacity claims against the Defendants can be deemed to be a claim against the City of Philadelphia under RLUIPA, that claim is discussed separately.

Ali makes no allegation regarding a custom or policy by which official capacity claims may be maintained.  He mentions only a policy under which his wife should have been permitted to visit him since he had no visitation restrictions, but also states that inmates in the SMU on punitive status, where he was apparently housed when his wife attempted to visit him, are not allowed visitors or phone calls.  (ECF No. 2 at 7.)  He also asserts the visitation denial was arbitrary, rather than in accordance with a stated policy.  (*Id.*)  Even ignoring the contradictory assertions and construing his allegations liberally, Ali fails to allege a violation of his constitutional rights due to a municipal policy or custom.  Accordingly, his official capacity claims will be dismissed under 28 U.S.C. § 1915(e)(2)(B).  Given the ambiguity with this allegation, the dismissal will be without prejudice, and Ali will be permitted to amend the claim.

### C.      First Amendment Free Exercise Claim

Ali asserts that he was denied attendance at weekly religious services and at holiday religious services.  The Supreme Court has recognized that the First Amendment guarantees that all prisoners must be afforded reasonable opportunities to exercise their religious freedom.  *Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972); *see also O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) ("Inmates clearly retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise of religion.") (citations omitted).  However, in order to state a plausible Free Exercise claim, a plaintiff must allege a "substantial burden" on the exercise.  *Thomas v. Review Bd.*, 450 U.S. 707, 718 (1981); *Wisconsin v. Yoder*, 406 U.S. 205, 218 (1972).  Moreover, although inmates retain certain protections afforded by the First Amendment, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."  *O'Lone*, 482 U.S. at 348 (quotations omitted).  While the federal courts must take cognizance of

7

valid constitutional claims of prison inmates, the Supreme Court repeatedly has cautioned that the task of prison administration has been committed to the responsibility of the legislative and executive branches of government; federal courts should be reluctant to second guess these authorities. *See, e.g., Turner v. Safley*, 482 U.S. 78, 84 (1987); *O'Lone*, 482 U.S. at 353.

The free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice and, if so, whether a compelling governmental interest justifies the burden. *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699 (1989) (internal citations omitted). As Ali asserts that he was not permitted to attend services while others of other faiths were not so restricted, his Free Exercise claim passes § 1915 screening.

### D.     RLUIPA Claim

RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). The statute states that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
> 
> > (1) is in furtherance of a compelling governmental interest; and
> > (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). "Religious exercise" refers to "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc–5(7)(A).

"[A] substantial burden exists where: (1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to

other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; or (2) the government puts substantial pressure on an adherent to substantially modify his behavior to violate his beliefs." *Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007); *see also id*. at 277-78 ("A plaintiff-inmate bears the burden to show that a prison institution's policy or official practice has substantially burdened the practice of that inmate's religion."). Citing to RLUIPA's legislative history, the United States Court of Appeals for the Third Circuit has explained that what constitutes a "substantial burden" should be defined broadly. *Id.* Therefore, to allege a *prima facie* case for a RLUIPA violation, a prisoner-plaintiff must assert that a substantial burden has been placed on his or her exercise of religious beliefs. *See Robinson v. Sup't Houtzdale SCI*, 693 F. App'x 111, 115 (3d Cir. 2017) (per curiam) ("The threshold question in any . . . RLUIPA case is whether the prison's challenged policy or practice has substantially burdened the practice of the inmate-plaintiff's religion.") (citing *Washington*, 497 F.3d at 277-78).

RLUIPA allows plaintiffs to "obtain appropriate relief against a government." 42 U.S.C. § 2000cc–2. Government is defined as "(i) a State, county, municipality, or other governmental entity created under the authority of a State; (ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (i); and (iii) any other person acting under color of State law[.]" *Id.* § 2000cc-5(4)(A). The Third Circuit has held that RLUIPA does not apply to government employees in their individual capacities. *Sharp v. Johnson*, 669 F.3d 144, 153 (3d Cir. 2012).

Because RLUIPA does not apply to government employees in their individual capacities, Ali's individual capacity RLUIPA claims against Carney, Farrell, Martin, and Black are dismissed with prejudice. The Court will, however, permit Ali's official capacity claim,

essentially a claim against the City of Philadelphia, to proceed at this time. *See Kelley Bey v. Keen*, Civ. A. No. 13-1942, 2014 WL 3563475, at *13 (M.D. Pa. July 17, 2014) (holding that official capacity RLUIPA claims against county officials was not barred by the Eleventh Amendment which only applies to states (citing *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 289-90 (5th Cir. 2012) (holding that while states may not be held liable for money damages under RLUIPA, municipalities and counties may)).

### E.     First Amendment Retaliation Claims

Ali alleges that (1) Defendant Martin placed him in segregation and removed him from his prison job in retaliation for filing grievances and (2) Defendant Carney did not respond to his attempts to contact her. In order to state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Coit v. Garman*, No. 19-2580, 2020 WL 2125780, at *3 (3d Cir. May 5, 2020). A prisoner's filing of a grievance is constitutionally protected conduct. *See Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006) (citing *Mitchell*, 318 F.3d at 530; *Davis v. Goord*, 320 F.3d 346, 35-53 (2d Cir. 2003)). Ali's allegation that Martin placed him in segregation and removed him from his prison job due to his protected activity is sufficient to allege a plausible retaliation claim. However, his assertion against Carney, that she did not respond to his attempts to contact her, fails to allege a plausible retaliation claim because there is no allegation she personally acted to place him in segregation

or take away his prison job.  Accordingly, the claim against Carney will be dismissed while the claim against Martin will proceed to service.

### F.    Claims Based Upon Placement in Segregation

The United States Court of Appeals for the Third Circuit has noted that, "[g]enerally, prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the 'underlying crime of which he stands accused.'"  *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting *Rapier v. Harris*, 172 F.3d 999, 1003-06 (7th Cir. 1999)).  With respect to pretrial detainees, "the imposition of disciplinary segregation for violation of prison rules and regulations cannot be imposed without providing the due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 . . . (1974)."  *Kanu*, 739 F. App'x at 116.  Such protections "include the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence."  *Id.* (citing *Wolff*, 418 U.S. at 563-66); *see also Stevenson v. Carroll,* 495 F.3d 62, 70 (3d Cir. 2007).

"[D]etention officials' restrictions on pretrial detainees will constitute punishment prohibited by the Due Process Clause when: (1) "there is a showing of express intent to punish on the part of [those] [ ] officials"; (2) "the restriction or condition is not rationally related to a legitimate non-punitive government purpose," i.e., "if it is arbitrary or purposeless"; or (3) "the restriction is excessive in light of that purpose."  *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017) (quoting *Stevenson v. Carroll*, 495 F.3d 62, 67-68 (3d Cir. 2007)) (alterations in original). "[M]aintaining internal security and order in jails and prisons are 'legitimate governmental objectives'" that may justify placement of a detainee in administrative segregation, and "courts must give prison officials considerable discretion to manage internal security in their

institutions." *Id.* In other words, if officials can articulate a legitimate managerial concern for placement of the detainee in restricted housing, a substantive due process claim is foreclosed. *Stevenson*, 495 F.3d at 69 ("Although the substantive and procedural due process evaluations are distinct, a showing by the prison officials that a restrictive housing assignment is predicated on a legitimate managerial concern and is therefore not arbitrary or purposeless, will typically foreclose the substantive due process inquiry").

In addition to the claim already discussed that Defendant Martin placed Ali in segregation and removed him from his prison job in retaliation for filing grievances, Ali's claims arising from his placement in segregation involve three separate allegations: (1) his access to library services was limited because he had to choose between recreation time, shower time, or law library time; (2) he was kept in handcuffs and shackles during his exercise period; and (3) his wife was not permitted to visit. He also seeks as part of his relief that he be placed back in the general population.

### 1.      Access to the Law Library

A claim asserting restrictions on access to the prison law library is considered as an "access-to-the-courts" claim under the First Amendment. *See, e.g., Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013). "A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (per curiam) (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)). This is because the right of access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). In other words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he

complains. *Diaz*, 532 F. App'x at 63 (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action). In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Christopher*, 536 U.S. at 415. "[T]he underlying cause of action, . . . is an element that must be described in the complaint." *Id*. Furthermore, the right to access the courts may be satisfied if the plaintiff has an attorney. *Diaz*, 532 F. App'x at 63 (citing *Bounds v. Smith*, 430 U.S. 817, 831 (1977) and *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988)); *see also Prater v. City of Phila.*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013) (per curiam).

Ali fails to tie any allegation that his law library access was restricted during his period in segregation to the actual loss of a nonfrivolous and arguable claim. Accordingly, this aspect of his segregations claims is not plausible and will be dismissed. The dismissal will be without prejudice and Ali may amend the claim if he is able to identify a nonfrivolous and arguable legal claim he lost due to the restriction on his access to the law library.

        2.      Exercise Restrictions

Ali's allegations concerning the restriction on his exercising while in segregation is considered as a Fourteenth Amendment due process claim. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005) (due process clause governs conditions of confinement claims brought by pretrial detainees). To establish a basis for a Fourteenth Amendment violation, a prisoner must allege that his conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). "Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective

13

component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotations and alterations omitted).

In that regard, "a 'particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.'" *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) (quoting *Stevenson*, 495 F.3d at 68); *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017). Courts should consider the totality of the circumstances in evaluating such a claim. *Bistrian*, 696 F.3d at 373 ("In evaluating a pretrial detainee's claim of unconstitutional punishment, courts must examine the totality of the circumstances within the institution."). Furthermore, "[i]n determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion," courts are obligated to keep in mind that "such considerations are peculiarly within the province and professional expertise of corrections officials . . . ." *Stevenson*, 495 F.3d at 68 n.3.

Ali fails to allege that Defendants had an express intent to punish him by requiring he remained shackled during his recreation period while in segregation. He fails to allege the restriction or condition was not rationally related to a legitimate non-punitive government purpose, or that the restriction was excessive in light of that purpose. Finally, he fails to allege that any named Defendant personally acted in an unconstitutional manner when he was required to remain shackled during his exercise period. For these reasons, this aspect of the segregation claim is not plausible and will be dismissed. The dismissal of this portion of the claim will also be without prejudice, and Ali may amend the claim if he is able to cure the defects the Court has identified.

3.        Visitation Restrictions

Inmates do not generally enjoy a constitutional right to visitation.  *See Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989) (no due process right to unfettered visitation); *Gerber v. Hickman*, 291 F.3d 617, 621-22 (9th Cir. 2002) ("It is well-settled that prisoners have no constitutional right while incarcerated to contact visits or conjugal visits."); *see also Goodwin v. Turner*, 908 F.2d 1395, 1399 (8th Cir. 1990) ("By its very nature, incarceration necessarily affects the prisoner's family."); *Hernandez v. Coughlin*, 18 F.3d 133, 137 (2d Cir. 1994) ("[R]ights of marital privacy, like the right to marry and procreate, are necessarily and substantially abridged in a prison setting."); *Bazzetta v. McGinnis*, 430 F.3d 795, 804 (6th Cir. 2005) (finding that there is no "implicit due process right to prison visitation."); *Block v. Rutherford*, 468 U.S. 576, 585-88, (1984) (pretrial detainees have no constitutional due process right to contact visits); *Saleem v. Helman*, 124 F.3d 205, 205 (7th Cir. 1997) (no constitutional right to conjugal visits); *McKnight v. Johnson*, 277 F.3d 1373 (5th Cir. 2001) (holding that it is often constitutionally permissible to forbid visitation between husband and wife in the prison setting).

As noted, the United States Supreme Court has held that pretrial detainees, such as Ali, have no constitutional due process right to contact visits.  *Block*, 468 U.S. at 585-88; *see also Davis v. Milwaukee County*, 225 F. Supp. 2d 967 (E.D. Wis. 2002) (pretrial detainee argued that he was denied visitation as punishment, but detainee failed to show that he had a constitutional right to visitation and that visitation which was discretionary may be denied to pretrial detainees based on legitimate security concerns); *Holloman v. Clarke*, 244 F. Supp. 3d 223 (D. Mass. 2017) (holding that the loss of contact visitations as a disciplinary action does not

15

violate the right to due process).  Because Ali had no right to visitation with his wife, this aspect of his segregation claim is dismissed with prejudice.

### 4. Return to General Population

Ali's claim that he should be removed from segregation and be returned to the general population is considered as a due process claim.  From a procedural standpoint, "[t]he degree of process required varies depending on the reason for the transfer, with greater process accorded to prisoners who are confined for disciplinary infractions than those moved for purely administrative reasons."  *Id.* at 70.  "[T]he procedures required by *Wolff v. McDonnell,* 418 U.S. 539 (1974), apply if the restraint on liberty is imposed for disciplinary reasons; if the restraint is for 'administrative' purposes, the minimal procedures outlined in *Hewitt v. Helms,* 459 U.S. 460 (1983) are all that is required."  *Lewis v. Williams*, Civ. A. No. 05-013, 2011 WL 2441377, at *17 (D. Del. June 13, 2011) (citing *Stevenson*, 495 F.3d at 70).  The procedures set forth in *Wolff* "include the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence."  *Kanu*, 739 F. App'x at 116; *see also Quiero v. Ott*, 799 F. App'x 144 at n.6 (3d Cir. 2020) (per curiam).

Ali's due process claim based upon his continuing to be housed in segregation is not plausible.  He does not allege the procedures set forth in *Wolff*, namely written notice of the charge and an opportunity to be heard, were denied to him.  Because the Court cannot say at this time that Ali can never state a plausible due process claim concerning his placement and retention in segregation, this claim will be dismissed without prejudice, and Ali will be granted leave to amend the claim if he can cure the defects the Court has identified in his claim.

**IV.     CONCLUSION**

For the reasons stated, certain claims in Ali's Complaint are dismissed with prejudice, other claims are dismissed without prejudice, and other claims are deemed to pass § 1915 screening.  Specifically, claims based on grievances, individual capacity claims under RLUIPA, the First Amendment retaliation claim against Defendant Carney, and claims based on visitation are dismissed with prejudice.  Ali's official capacity claims (other than his official capacity RLUIPA claim), his access to the prison law library claim, his inability to exercise unshackled claim, and his due process claim based upon his continuing to be housed in segregation, are dismissed without prejudice and with leave to file an amended complaint.

Should Ali choose not to file an amended complaint and stand on his Complaint as originally submitted, only his First Amendment Free Exercise claim, his official capacity RLUIPA claim, and his First Amendment retaliation claim against Defendant Martin will proceed and be served on the appropriate Defendants.  An appropriate Order follows.

**BY THE COURT:**


*/s/ John M. Gallagher*
**JOHN M. GALLAGHER, J.**
